**NOT FOR PUBLICATION**

> **FILED & ENTERED**
>
> **NOV 12 2013**
>
> **CLERK U.S. BANKRUPTCY COURT**
> Central District of California
> **BY bailey      DEPUTY CLERK**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

| | |
|---|---|
| In re:<br><br>Vipul Kapoor and Reshma Kapoor,<br><br>Debtor(s), | Case No.: 6:13-bk-10307-MJ<br><br>Adversary No.: 6:13-ap-01155-MJ<br><br>Chapter: 7 |
| Petar Marovic,<br><br>Plaintiff,<br><br>v.<br><br>Vipul Kapoor and Reshma Kapoor,<br><br>Defendant(s). | **MEMORANDUM OF DECISION AFTER TRIAL OF COMPLAINT FOR NONDISCHARGEABILITY (§ 523(a)(6))**<br><br>Date:        October 28, 2013<br>Time:        9:30 a.m.<br>Location:   Courtroom 301<br>              3420 Twelfth Street<br>              Riverside, CA 92501 |

In this adversary proceeding, Plaintiff Petar Marovic (Marovic) asserts that damages caused to him by debtor Vipul Kapoor (debtor) when debtor removed fixtures and equipment from the business premises which he leased from Marovic are nondischargeable under §523(a)(6)[1], as a willful and malicious injury caused by debtor.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure. The Federal Rules of Civil Procedure are referred to as Civil Rules.

After trial on the merits, this court finds that Marovic has proved by circumstantial evidence that debtor acted with the requisite intent to injure necessary for the willful prong of §523(a)(6) and that the elements of malice are also met.   Therefore, the court will enter a judgment for nondischargeability in this action.  This Memorandum shall serve as the court's findings of fact and conclusions of law as allowed under Civil Rule 52(a) (1), as incorporated into bankruptcy proceedings by Rule 7052.

FACTS

Marovic bought out partners and became the sole owner of real property located at 27911 Jefferson Avenue, Temecula, California, in approximately 1993.  The property consists of a shopping center, with multiple business tenants, including a liquor store and market in Suite # 109 (the Premises).  After becoming sole owner of the Premises, Marovic installed various fixtures and improvements, including custom coolers, signage, a security gate, and custom cabinets and countertops. These improvements were affixed to the floors and walls by nail guns and other permanent structures.

On August 10, 2004, Marovic entered into a Standard Industrial/Commercial Single Tenant Lease (Lease) with Kwang Bin Kim and James Hwan Kim of the Premises, with a five year term, commencing on August 1, 2004.  On approximately June 19, 2008, the Kims and debtor entered into a purchase and sale transaction by which the debtor bought the liquor store and market from the Kims.  The documentation of this transaction presented at trial was sketchy, but the court did receive a document called Bill of Sale, to which were attached pages 1 and 3 of a Business Disclosure Statement (Disclosure Statement) and to which was also stapled a 3-page document entitled Assignment of Lease Without Release (debtor's Exhibit 102).  The Assignment of Lease Without Release (Assignment) was also offered into evidence by Marovic, received as Exhibit 4, but the documents are not identical.  Marovic's exhibit is clean, with no handwriting other than the signatures and dates of the Kims, Vinud Kapoor (debtor's father), and Marovic on page 3

and the initials "MM" on pages 1 and 2.  Debtor's version stapled to the Bill of Sale has

handwriting on page 1.  The court finds that the Assignment was not stapled to the Bill of

Sale at the time it was executed by Marovic because Marovic's initials do not appear on

the Bill of Sale or the attached pages from the Disclosure Statement.[2]  By executing the

Assignment, Marovic consented to debtor's sublease of the Premises from the Kims and

debtor assumed all the terms, conditions, and obligations of the Lease, which per the first

paragraph of the Assignment was attached to the document.[3]  Debtor presumably read the

Lease which he agreed to abide by.  Marovic did not agree to any of the other terms of

sale between the Kims and debtor.

In the sale transaction with the Kims, debtor appeared to be buying a going

business with more assets than just the leasehold rights.  However, it is impossible to

know from the documents submitted exactly what the Kims were selling and the debtor

thought he was buying.  Page 1 of the Disclosure Statement has the following provision:

> ITEMS OFFERED FOR SALE:  The following items, as listed on the attached lists,
> are included in the offer to sell, subject to any lessor rights, and transferability and
> disclosed restrictions (if checked):

This provision is followed by a two column list with boxes for items such as

inventory, furniture, fixtures, logos, and other equipment.  Handwritten by many of the

boxes are asterisks and it is possible that some of the boxes are checked by some other

marking.  The court cannot speculate about when the marks were made or who made

them.  Despite the quoted language, no lists were attached.  It is uncertain what debtor

bought, but whatever he bought was subject to the lessor rights of Marovic.  Marovic was

not privy to the sale transaction between debtor and the Kims, other than approving the

Assignment, and would not have seen the transactional documents in the normal course.

---

[2]  The significance of this finding is detailed below.
[3]  Neither of the versions of the Assignment offered at trial had the Lease attached.

MEMORANDUM OF DECISION AFTER TRIAL OF COMPLAINT OF NONDISCHARGEABILITY (§523(a)(6))

He did not approve the sale of any of the "items."  Significantly, the price debtor paid to purchase the store was not stated.

Debtor operated the liquor store and market from June 2008 to October 2010 but not profitably.  Because of the recession the business declined substantially, as all other small businesses experienced in that time.  When the Lease term expired on July 31, 2009, debtor tried to negotiate a new lease with lower rent which would have allowed him a greater profit margin.  Marovic refused, finding the offer by debtor below market for the area.  Therefore, debtor held over as a month to month tenant under the terms of the Lease, often paying the rent late and eventually falling into substantial default.

Frustrated with his inability to negotiate an affordable rent, debtor threw in the towel in October 2010, sending a letter (Exhibit 6) to Marovic, announcing his displeasure with not negotiating a new lease and his intent to close and vacate the Premises.  This letter triggered the events which led to this litigation in bankruptcy court.

Sometime in the first two weeks of October 2010, debtor began dismantling all the fixtures in the Premises and removing them for his own use and purposes.  Prior to commencing this action, debtor never advised Marovic that he intended to do so and never determined who owned the coolers,  countertops and built-in cabinets,  security gate,  air conditioning unit and condenser, and other fixtures attached to the Premises. Removal was not easy.  In order to remove the custom cabinets, debtor had to dismantle them and pry the nails out of the floor.  Removal of the coolers left electrical wires dangling.  The floor, which was clearly tiled after the fixtures were installed, had bare concrete under the removed fixtures and in some places substantial holes through which wiring had run.  The walls were discolored where the coolers had attached.  Removal of the condenser on the roof left damage to the surface of the roofing and holes going through to the Premises below.  Debtor claimed he used professionals to assist in this destruction, but offered no evidence such as invoices to corroborate that testimony.

1   Alerted by phone calls from other tenants, Marovic visited the Premises during the

2   destruction and advised debtor to stop taking his property.  When debtor protested that he

3   owned all these built in fixtures, Marovic asked him to consult an attorney before doing

4   more damage.  Debtor refused to stop and told Marovic "take me to court; I will never pay

5   you anything."  When law enforcement was called but declined to become involved in the

6   civil dispute, Marovic took pictures of the destructive actions (Exhibits 23-32) and gave up

7   trying to stop debtor.

8   After debtor completed dismantling all the fixtures and other personal property, he

9   attempted to clean the Premises and patch holes left when he removed the fixtures.  His

10  pictures (Exhibit 106) show exposed concrete floor with holes, damaged and discolored

11  walls where the coolers were removed, some dangling electrical wiring, flooring below the

12  coolers which demonstrate how the coolers were built into the floors on sliders and the

13  general disarray of the Premises when the custom cabinets were removed.  Debtor never

14  gave a reason for the removal of the fixtures in his testimony and did not say whether he

15  was able to sell any of the 20 year old fixtures for value.

16  Marovic retook the Premises in a condition that was totally useless to him without

17  major renovations.  It could not be rerented as a liquor store or for any other purpose.  He

18  undertook to make the repairs and replace the missing fixtures, as demonstrated by the

19  invoices and checks introduced into evidence at trial.  Marovic needed to replace the

20  coolers and refrigeration; repair the roof; install and repair the air conditioning system;

21  replace the countertops and cabinets; replace the security gate; repair the electrical

22  wiring, drywall and floor; and replace the channel letter signage on the front of the

23  building.  In total, he expended $87,705.92 repairing the Premises and replacing the

24  fixtures taken by debtor.

25  Marovic sued debtor in state court and default was entered against debtor when he

26  did not timely answer the complaint.  Before the motion for entry of default judgment was

27  heard by the state court, debtor filed this chapter 7 proceeding on January 8, 2013,

28

MEMORANDUM OF DECISION AFTER TRIAL OF COMPLAINT OF NONDISCHARGEABILITY (§523(a)(6))

Case 6:13-ap-01155-MJ    Doc 24    Filed 11/12/13    Entered 11/12/13 14:18:57    Desc
Main Document    Page 6 of 13

1   staying the state court prosecution.  On April 9, 2013, Marovic filed timely this complaint

2   for nondischargeability, asserting that the damages he sustained were caused by the

3   willful and malicious conduct of debtor.

4

5                                        LEGAL ANALYSIS

6        Section 523(a) (6) excepts from discharge a willful and malicious injury by debtor to

7   another entity or the property of another entity.  Supreme Court and 9th circuit case law

8   have refined the requirements to prove such nondischargeable injury.  The Supreme

9   Court in *Kawaauhau v Geiger*, 523 U.S. 57 (1998), determined that the willful prong of

10  §523(a) (6) required a deliberate or intentional injury, not merely a deliberate or intentional

11  act that leads to injury, i.e. that the debtor intended to injure the party.[4]  The 9th Circuit

12  and the 9th Circuit Bankruptcy Appellate Panel took a couple of stabs at refining the (a) (6)

13  standards post-G*eiger* and arrived at an articulated standard for proof in *Carrillo v Su (In

14  re Su)*, 290 F. 3d 1140, 1144 – 1147 (9th Cir. 2002).  For the willful prong, claimant must

15  establish that debtor had either a subjective intent to harm or a subjective belief that harm

16  is substantially certain to occur.  In determining whether the evidence establishes this

17  prong, the court is not required to take the debtor's word for his state of mind.  The court

18  may also consider circumstantial evidence that tends to establish what the debtor must

19  have actually known when taking the injury-producing action.  *Id.* at 1146, fn 6.

20       The malicious injury element involves (1) a wrongful act, (2) done intentionally, (3)

21  which necessarily causes injury, and (4) is done without just cause or excuse.  *Id.*  at

22  1147. See, also, *Petralia v Jercich (In re Jercich)*, 238 F.3d 1202 (9th Cir. 2001).  The two

23

24

---

25  [4]  Marovic argued in his trial brief that the law of the 9th circuit, as set forth in *Impulsora Del Territorio Sur,
    S.A. v Cecchine (In re Cecchini)*, 780 F. 2d 1440, 1443 (9th Cir. 1986), required only a showing of intent to
26  commit the act which led to injury, so that the state law tort of conversion would automatically be a
    nondischargeable debt in bankruptcy.  However, G*eiger* rendered *Cecchini* no longer good law on the willful
27  prong, as determined by *In re Peklar*, 260 F. 3d 1035, 1039 (9th Cir. 2001), because proof of conversion
    does not need to show intent to injure.  Therefore, proof of state law conversion does not establish
28  nondischargeability without more.

factors must be addressed separately and failure under either prong will result in discharge of the debt.  *In re Su*, 290 F. 3d at 1147.

With these guidelines in mind, the court addresses what the evidence established at trial.

Without question, debtor's acts in dismantling the liquor store as he vacated caused substantial damage to Marovic.  Marovic was left with "four walls" and not much else and even those walls, floor, and ceiling had holes, discoloring, and missing tiles where the custom built fixtures had resided.  Before Marovic could lease again the Premises to a subsequent tenant he incurred substantial costs replacing the air conditioning system, coolers, cabinets, and security gate and repairing the damage to electrical wiring, walls, and floors to put the Premises into operable condition.   The Lease and California law establish that the fixtures which debtor removed, causing this damage, belonged to Marovic.

Even if debtor had installed the fixtures which he removed, under California law he had no right to do so.  "A chattel will become a fixture if it is annexed in a manner relatively permanent and is of such a nature as to be suitable for use as part of the land to which it is annexed."  *People v. Church,* 57 Cal. App. 2d Supp. 1032, 1041 (1943).  "A fixture is that which was once a chattel, but which, by being affixed to realty or appurtenances, at least by juxtaposition, for use in connection therewith, has become part and parcel of it."  *Id.*

A fixture installed by a tenant becomes the property of the landlord on termination of the tenancy, with two exceptions.  Cal. Civil Code §1013. The first exception is when there is an agreement allowing the tenant to remove the fixtures.  *Id.*   The second exception is where the fixtures are "for the trade, manufacture, ornament or domestic use, if the removal can be affected without injury to the premises…" Cal. Civil Code §1019.

The Lease did not allow debtor to remove the fixtures.  Lease, sections 7.3-7.4.  These provisions allow the tenant to remove trade fixtures only if the property was not

1    damaged upon removal.  The photographs of the debtor (and those taken by Marovic

2    before the dismantling was completed) show that the property removed by debtor left

3    damages.  Marovic never saw nor approved the purchase agreement with the Kims and

4    never gave permission to debtor to remove fixtures.  Therefore, the exceptions provided

5    by statute do not apply.

6        Moreover, the only evidence presented at trial established that Marovic, not debtor,

7    installed all the fixtures which debtor removed.[5]  Marovic testified that when he took sole

8    ownership of the premises in 1994, he installed the coolers, cabinets and countertops,

9    and security gate.  The air conditioning system, electrical wiring, roof, and walls all would

10   appear to have been part of the tenant improvements pre-existing Marovic's sole

11   ownership.  Significantly, debtor did not assert that he installed any of the property.  His

12   only testimony was that he believed he bought the fixtures and that this ownership gave

13   him the authority to remove everything which he took.  The court must examine the

14   credibility of that testimony to ascertain debtor's subjective intent to injure and whether he

15   had just cause or excuse when he damaged the Premises.

16       The only corroborating evidence debtor offered to bolster his claim that he took only

17   what belonged to him was the Bill of Sale with the attached two pages of the Disclosure

18   Statement.  As noted above, page 2 of the Disclosure Statement, where it offered items

19   for sale, stated the offer was "subject to any rights of the lessor" and also purportedly

20   established the exact items being sold by attached lists.  No lists were attached.  This lack

21   alone would imply that no items were meant to be sold.  In addition, the markings on the

22   boxes by the types of items sold are suspicious and very likely not on the original of the

23   Disclosure Statement.  This evidence does not prove that the Kims represented they were

24   selling fixtures to debtor.  And there is little doubt that Marovic never saw these

25   documents or approved the alleged transfer of ownership.  The court also finds it odd that

26

27   _____
     [5]  The complaints filed in state court and here, as well as the trial brief submitted by Marovic, all allege that
28   debtor installed the coolers and the cabinets/countertops.  However, no proof of this installation was offered
     by either party.  In addition, Marovic testified he installed all the tenant improvements and fixtures.

debtor never said what he paid for the business, so there is no way to speculate whether the purchase price included value for more than the inventory and goodwill.

Also relevant to the court as to debtor's state of mind as he dismantled the Premises was the built in quality of what he was removing.  The pictures of the fixtures while they were being removed establish beyond any doubt that they were custom made for the Premises.  To remove the cabinets, debtor had to literally tear them apart, as the photos depicted the nails protruding from the dismantled wood.  When the coolers and cabinets were removed, the tiling of the floor, which stopped at the edges of these items, clearly showed they were built-in and intended to remain unmoved.  Marovic found damaged electrical wiring (evident in his photos, not so much in debtor's) inside the walls when he retook the Premises.  Debtor could not have believed he was entitled to take these items when he left.  Even more astounding was the removal of the air conditioning and condenser from the roof and the security gate, an integral part of any leased commercial space.

Although debtor claimed he was entitled to take the fixtures, he did not give any valid justification for doing so.  As noted by Marovic and his son's testimony, the items removed were custom designed for the Premises, 20 years old, and had virtually no resale value out of place.  Notably, debtor did not assert that he sold the items for value or needed the money he might have received to feed his family or pay down his debt.  The nature of what was removed implies no value was received and no economic motive for taking them existed.

Circumstantially, the evidence points to a disgruntled tenant, refused a new lease at an economically viable rent, who chose to get back at his landlord on his way out the door.  And his way of getting back was to make certain that Marovic would be unable to rent the Premises to the next tenant without substantial cost.  So debtor commenced dismantling the custom built fixtures and removing them.  Even when Marovic, alerted by other tenants in the complex, confronted him in the middle of the process, debtor refused

to stop, read the Lease, or consult an attorney to establish his rights.  Instead, his response was "take me to court."

The court finds debtor had the requisite intent to injure Marovic when he took his property and dismantled the Premises.   His acts were wrongful, done intentionally, necessarily caused injury and were done without just cause or excuse.  The damages incurred by Marovic in the sum of $87,705.92 are nondischargeable under §523(a) (6).

## DEFENDANT RESHMA KAPOOR

Although Vipul Kapoor's wife Reshma Kapoor was also named as a defendant, neither proof nor argument for nondischargeability was presented against her.  Therefore, the case shall be dismissed as to her.

## ATTORNEY'S FEES

Whether a successful claimant is entitled to attorney's fees in a nondischargeability action turns on whether such claimant would be entitled to an award of attorney's fees for trying a like cause of action under state law.  The 9th circuit BAP addressed this issue in *In re Pham*, 250 B.R. 93, 99 (9th Cir. BAP 2000):

> We agree that, after *Cohen*, the determinative question in cases under §523(a) (2) is whether the successful plaintiff could recover attorney's fees in a non-bankruptcy court.

The BAP expanded this holding to other nondischargeability actions in *In re Dinan*, 448 B.R. 775, 784 (9th Cir. BAP 2011), where the action arose under §523(a) (14) and the BAP articulated that the *Dinan* holding applied to all nondischargeability grounds.  The California Supreme Court in *Santisas v Goodin*, 17 Cal. 4th 599, 608 (1998) concluded that, depending on the wording of the fee provision in a contractual attorney's fee clause, there may be a contractual right to recover attorney's fees in litigating tort claims.

Therefore, this court's analysis of whether Marovic, as prevailing party, is entitled to an award of attorney's fees for prosecution of this action turns on the language in the attorney's fees clause in the Lease, the obligations of which were assumed by debtor in the Assignment.  The clause here is very broad:

> §31 Attorneys' Fees.  If any Party or Broker brings an action or proceeding involving the Premises whether founded in tort, contract or equity, or to declare rights hereunder, the Prevailing Party…in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorneys' fees.

Under *Santisas*, Marovic is entitled to his reasonable attorney's fees for prevailing in this litigation.  Such fees may be sought by motion as provided by Local Bankruptcy Rule 7054-1(g).

###

Date: November 12, 2013

Meredith A. Jury
United States Bankruptcy Judge

## NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **MEMORANDUM OF DECISION AFTER TRIAL OF COMPLAINT FOR NONDISCHARGEABILITY (§ 523(a)(6))** as entered on the date indicated as ⒶEnteredⒶ on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (ⒶNEFⒶ)** Ⓑ Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of November 13, 2013, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

- Thomas A. Fasel              taf@faselnefulda.com
- United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov
- Robert L. Goodrich (TR)       office@rlgoodrichlaw.com

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail to the following person(s) and/or entity(ies) at the address(es) indicated below:

Vipul Kapoor
31103 Samantha Lane
Temecula, CA 92592

Reshma Kapoor
31103 Samantha Lane
Temecula, CA 92592

Peter Marovic
27311 Jefferson Avenue
Temecula, CA 92590-5601

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an ⒶEnteredⒶ stamp, the party lodging the judgment or order will serve a complete copy bearing an ⒶEnteredⒶ stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the

1    entered order on the following person(s) and/or entity(ies) at the address(es), facsimile
2    transmission number(s) and/or email address(es) indicated below:

3                            ☐   Service information continued on attached page

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF DECISION AFTER TRIAL OF COMPLAINT OF NONDISCHARGEABILITY (§523(a)(6))